# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 13, 2010

## STATE OF TENNESSEE v. QUORTEZ DESHAWN DUNCAN

### Appeal from the Circuit Court for Maury County
### No. 16921      Stella Hargrove, Judge

_____

### No. M2009-00525-CCA-R3-CD - Filed April 5, 2010

_____

The Defendant, Quortez Deshawn Duncan, was convicted by a Maury County jury of possession of .5 grams or more of cocaine with the intent to sell, a Class B felony. The trial court sentenced the Defendant to nine years in the Department of Correction, to be suspended after service of one year. In this direct appeal, the Defendant argues that the evidence is insufficient to support his conviction and that his sentence is excessive. Concluding that the evidence is sufficient and that the Defendant's sentence is consistent with our 1989 Criminal Sentencing Reform Act and its amendments, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Michael D. Cox, Columbia, Tennessee, for the appellant, Quortez Deshawn Duncan.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Mike Bottoms, District Attorney General; and Brent Cooper, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

On March 7, 2007, a Maury County grand jury indicted the Defendant for possession of .5 grams or more of cocaine with the intent to sell, a Class B felony. See Tenn. Code Ann. § 39-17-417(a), (c)(1). A jury trial was held on October 22, 2008.

On the evening of September 20, 2006, Sergeant (now lieutenant) Troy Potts, along with other officers of the Crime Suppression Unit of the Columbia Police Department, was patrolling the downtown area of Columbia. Sergeant Potts was alerted of a vehicle with a possible window tint violation. As he pulled in behind the Defendant's Pontiac Grand Am, he could see the window tint "was obviously very dark in the car." Sergeant Potts initiated a traffic stop of the vehicle. Other officers quickly arrived on the scene of the stop, including K-9 Officer Todd Bone (now Cornersville Chief of Police) and Officer Mark Owens.

The Defendant pulled over. Sergeant Potts identified the Defendant as the driver of the vehicle, and he explained to him the reason for the stop. Sergeant Potts asked the Defendant for permission to search his vehicle, but the Defendant refused. As Sgt. Potts was issuing the Defendant a citation for the tint violation, Officer Bone walked the dog around the Defendant's car. The dog "alerted" to the presence of drugs on the driver's side door and the driver's seat of the car. Based upon the dog's "alert" to these certain areas of the vehicle, Officer Bone indicated to Sgt. Potts that he should check the Defendant's buttocks area.

After the "alert" from the dog, the Defendant was "really nervous acting," so Sgt. Potts performed a "pat-down" search looking for weapons. Sergeant Potts discovered a "hard rock-like substance" in the Defendant's underwear; he immediately knew that the substance was drugs. Sergeant Potts held on to the substance, and the Defendant began trying to pull away. The Defendant shouted, "get your hand out of my ass[,]" and he was then placed in handcuffs.

Officer Owens read the Defendant his Miranda[1] rights and tried to calm him down. After several minutes of being unable to remove the substance from the Defendant's underwear, the officers used a pocketknife to cut it out. According to the officers, it appeared to have been sewn into the Defendant's underwear. The substance was later tested by an agent with the Tennessee Bureau of Investigation, and it was determined to be 22.2 grams of crack cocaine.

---

[1] See Miranda v. Arizona, 384 U.S. 436 (1966)

Sergeant Potts also found $166 in cash on the Defendant's person; however, the Defendant told Sgt. Potts he was unemployed. Officers also searched the Defendant's vehicle, and no drug paraphernalia was located on his person or inside the car.

According to Sgt. Potts and Officer Owens, in their experience, it was common for people to hide drugs on their person. At trial, Sgt. Potts testified that 22.2 grams of crack cocaine was a "felony amount" because "[y]ou would never find that amount on a [simple] user." Officer Owens testified that "[t]he amount itself suggested the more appropriate charge would have been a resale."

Officer Josh Davis with the Columbia Police Department's Narcotics and Vice Unit was also present at the traffic stop of the Defendant. He testified that, based upon his experience in narcotics investigations, the "street value" of an ounce of crack cocaine (28 grams) was "about anywhere from a thousand to twelve hundred dollars . . . ."

While the Defendant did not testify, the defense theory presented through closing argument was that the Defendant was guilty of only simple possession, as there was no proof of his intent to sell. Following the conclusion of the proof, the Defendant was found guilty as charged, and the jury assessed a fine of $25,000.

A sentencing hearing was held on November 20, 2008. At the time of the sentencing hearing, the Defendant was only twenty years old; he and his child resided with his mother. The Defendant was not employed and had no significant employment record. He testified that he was attending barber college in Nashville five days a week and was financially supported by his mother. The Defendant stated that he sold cocaine to support his family. Following the conclusion of the proof, the trial court sentenced the Defendant as a Range I, standard offender to nine years in the Department of Correction. After serving one year, the sentence was to be suspended, and the Defendant placed on probation. The Defendant filed a motion for new trial, which was denied. This timely appeal followed.

## I. Sufficiency

The Defendant challenges the sufficiency of the evidence, contending that the evidence presented at his trial was insufficient to establish that he had the intent to sell the crack cocaine discovered in his possession. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State

v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

In order to be sufficient to support the Defendant's conviction in the present case, the evidence presented at trial had to establish beyond a reasonable doubt that the Defendant knowingly possessed .5 grams or more of cocaine with the intent to sell. See Tenn. Code Ann. § 39-17-417(a), (c)(1). A specific mental state (such as intent to sell) is an element of almost all criminal offenses, and it is proven most often by circumstantial evidence. State v. Timmy Lee Hill, No. M2005-01126-CCA-R3-CD, 2006 WL 1374668, at *6 (Tenn. Crim. App., Nashville, May 17, 2006) (citing Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973)). Usually, the trier of fact must determine whether the culpable mental state was present by drawing inferences from the circumstances under which a defendant is arrested, and there are numerous factual circumstances from which a jury may properly infer that a defendant had the intent to sell or deliver the drugs found in his possession. See State v. Vincent D. Steele, No. M2007-00420-CCA-R3-CD, 2008 WL 366147, at *4 (Tenn. Crim. App., Jan. 11, 2008) (citing State v. Toney L. Conn, No. M2005-02899-CCA-R3-CD, 2006 WL 3498048, at *5 (Tenn. Crim. App., Nashville, Nov. 21, 2006) (setting out the factual scenarios surrounding a defendant's possession of cocaine in eight different cases where this Court found the evidence sufficient to prove intent)).

Moreover, Tennessee Code Annotated section 39-17-419 specifically sets out that the requisite intent to sell can be properly inferred from the circumstances surrounding a defendant's arrest:

It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of the provisions of § 39-17-417(a). The inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider the inferences along with the nature of the substance possessed when affixing the penalty.

The jury in the present case found that the Defendant had the intent to sell the cocaine found in his possession based on the evidence presented at trial. Viewed in a light most favorable to the State, the evidence presented established: (1) the Defendant possessed 22.2 grams of crack cocaine; (2) the cocaine was sewn into his underwear; (3) 28 grams of crack cocaine had a "street value" of "about anywhere from a thousand to twelve hundred dollars"; (4) Sgt. Potts and Officer Owens testified that the large amount suggested intent to sell on the part of the Defendant; (5) the Defendant had $166 on his person, yet was unemployed; and (6) there was no drug paraphernalia found on the Defendant's person or in his car. "[A] lack of drug paraphernalia, combined with the amount of drugs found in a defendant's possession, may support an inference that the defendant possessed the drugs with the intent to sell or deliver rather than for his own personal use." State v. Charles Henry Jenkins, No. M2004-01931-CCA-R3-CD, 2005 WL 1812827, at *8 (Tenn. Crim. App., Aug. 1, 2005) (citation omitted).

We conclude that this evidence, and the reasonable inferences it allows, adequately support the jury's conclusion that the Defendant possessed the cocaine with the intent to sell it. The amount of crack cocaine the Defendant possessed (22.2 grams) is more than sufficient to satisfy the statutory provision under which he was convicted, see Tennessee Code Annotated section 39-17-417(c)(1) (requiring that the amount of substance containing cocaine weigh "point five (.5) grams or more"), and the attendant circumstances of his arrest support the inference that he possessed it with the intent to sell.

## II. Sentencing

Next, the Defendant contends that his sentence was excessive. He submits that the trial court erred by relying on his juvenile record to increase his sentence to nine years and that he should have received full probation.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999); see also State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see also Carter, 254 S.W.3d at 344-45.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also Carter, 254 S.W.3d at 343; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

**A. Length**

The Defendant's conduct occurred subsequent to the enactment of the 2005 amendments to the Sentencing Act, which became effective June 7, 2005. The amended statute no longer imposes a presumptive sentence. Carter, 254 S.W.3d at 343. As further explained by our supreme court in Carter,

> the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." [Tenn. Code Ann.] § 40-35-210(d). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," [Tenn. Code Ann.] § 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," [Tenn. Code Ann.] § 40-35-102(3), and consideration of a defendant's

> "potential or lack of potential for . . . rehabilitation," [Tenn. Code Ann.] §
> 40-35-103(5).

Id. (footnote omitted).

The 2005 Amendment to the Sentencing Act deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered these factors merely advisory, as opposed to binding, upon the trial court's sentencing decision. Id. Under current sentencing law, the trial court is nonetheless required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. Id. at 344. The trial court's weighing of various mitigating and enhancing factors is now left to the trial court's sound discretion. Id. Thus, the 2005 revision to Tennessee Code Annotated section 40-35-210 increases the amount of discretion a trial court exercises when imposing a sentencing term. Id. at 344.

To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See id. at 343; State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001). If our review reflects that the trial court applied inappropriate mitigating and/or enhancement factors or otherwise failed to follow the Sentencing Act, the presumption of correctness fails and our review is de novo. Carter, 254 S.W.3d at 345.

## B. Full Probation

Effective June 7, 2005, our legislature amended Tennessee Code Annotated section 40-35-102(6) by deleting the statutory presumption that a defendant who is convicted of a Class C, D, or E felony, as a mitigated or standard offender, is a favorable candidate for alternative sentencing. Our sentencing law now provides that a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, *should* be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. A court shall consider, but is not bound by, this advisory sentencing guideline." Tenn. Code Ann. § 40-35-102(5), (6) (emphasis added). No longer is any defendant entitled to a presumption that he or she is a favorable candidate for alternative sentencing. Carter, 254 S.W.3d at 347.

The following considerations provide guidance regarding what constitutes "evidence to the contrary":

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1); see also Carter, 254 S.W.3d at 347. Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. Tenn. Code Ann. § 40-35-103(5).

The Defendant is eligible for probation because his actual sentence was less than ten years, and the offense for which he was sentenced is not specifically excluded by statute. See Tenn. Code Ann. § 40-35-303(a). However, a defendant bears the burden of proving his or her suitability for probation. See Tenn. Code Ann. § 40-35-303(b); see also Carter, 254 S.W.3d at 347. No criminal defendant is automatically entitled to probation as a matter of law. See Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Comments; State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See Carter, 254 S.W.3d at 347; State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment. See Souder, 105 S.W.3d at 607. If the court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence, but then suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement. See Tenn. Code Ann. §§ 40-35-303(c), -306(a).

Here, the Defendant's sentence resulted from his conviction for a Class B felony. Because the Defendant was convicted of a Class B felony, he is not considered a favorable

candidate for alternative sentencing. In light of his Class B felon status, it is the Defendant who bears the burden of establishing suitability for an alternative sentencing option.

## C. Trial Court's Ruling

The trial court imposed a nine-year sentence as a Range I, standard offender for the Defendant's Class B felony conviction. As a Range I offender, he was subject to a sentence of eight to twelve years. See Tenn. Code Ann. § 40-35-112(a)(2).

In fashioning the Defendant's nine-year, split confinement sentence, the trial court ruled as follows:

> In deciding the appropriate sentence, the Court has to consider the following: The presentence report, the general principles of sentencing, arguments made as to sentencing alternatives by the lawyers, the nature and characteristics of the criminal conduct involved, any evidence or information offered by counsel regarding mitigating or enhancement factors and any statistical information provided by the A.O.C. as to sentencing practices for similar offenses in Tennessee as well as any statement that the defendant cares to make on his behalf and his potential for rehabilitation or treatment.

> Insofar as the prior record of the [the Defendant], the presentence report shows multiple—an extensive juvenile record for him, shows an extensive juvenile record for him. He by his own admission was incarcerated by grade 10. I am not aware of any adult convictions thus far of [the Defendant].

> Insofar as the potential for rehabilitation or treatment, [the Defendant] says that he has never used drugs or alcohol and so that would not be a factor or a consideration for the [c]ourt being that he has no difficulty with drugs or alcohol.

> Insofar as his prior employment and I am talking now about his social history. The report doesn't bear out his employment, particularly insofar as working at the Detention Center. He said he worked there for as long as four months. Now, my understanding of the report is that the Detention Center said he worked there shortly, for a very short period, that he was not even there through his background check because once a background check was finished, he never called back to continue employment with them and so that's the [c]ourt's understanding as to that.

Insofar as [the Defendant's] testimony about selling drugs to provide for his mother who was suffering and his child, the [c]ourt does not believe that. The [c]ourt does not find [the Defendant] credible in that regard.

The [c]ourt's considering that this defendant was on bail, out on bail, under yet another felony charge when he committed this offense. The [c]ourt does not observe the obvious remorse of which counsel speaks. I didn't observe any remorse. There may be some remorse that he got caught once they stopped him that night for those tinted windows and discovered that lump of cocaine on him.

[The Defendant] will not come clean with the [c]ourt on the specifics of how much that cocaine was worth and how much money he would have made off of that 22 grams when the [c]ourt finds that he has the ability to give that type of testimony. So he is not forthcoming even though you might say that he has taken some responsibility, he obviously is convicted, he is caught red-handed and I guess if that's taking responsibility, then it is. The cocaine is on him. The stop was good. So I don't know how you take responsibility except that he has not told the truth about anything else beyond that cocaine on him insofar as what it is worth and insofar as what he was going to do with it and where the money was going. [The Defendant] is not credible before this [c]ourt today in that regard.

Insofar as the enhancement factors, the [D]efendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the range. How is that, General? How do you figure that?

[THE STATE]: He has a criminal history. Due to his age you can consider [his] juvenile record. In order to establish the range as a Range I offender, he need not have any prior convictions. I guess in order to be a [s]tandard Range I offender, he just need not be a mitigating offender. But Your Honor can certainly find that with his extensive juvenile record that he has a criminal history in addition to that which is necessary to find that he is a Range I offender.

THE COURT: Well, he has a juvenile record of criminal conduct, he does have that.

. . . .

-10-

The [c]ourt wants to say that also she does not believe the [D]efendant's testimony when he explains this money that was found on him upon arrest and does not believe that this money came from any type of employment or an legal income.

No mitigating factors were found applicable to the Defendant.  See Tenn. Code Ann. § 40-35-113.  The trial court then announced its sentencing decision as follows:

Now, the [c]ourt having considered all of those factors and provisions now sentences [the Defendant] to serve nine years in the Tennessee Department of Correction[ ] as a Range I, [s]tandard Offender.  Under 40-35-306, he is sentenced under split confinement and will serve one year of that sentence continuously in the local jail.

## D. Appellate Review

The Defendant argues that the trial court erred by enhancing his sentence based upon his juvenile record and that the trial court erred by denying his request for full probation.  First, we note that it is unclear from the record whether the trial court actually found the Defendant's juvenile record to be a statutory enhancement factor or how much weight the court gave that factor in determining the Defendant's sentence.  Moreover, the Defendant's offense was committed after the effective date of the 2005 amendments to the 1989 Criminal Sentencing Reform Act, which eliminated presumptive minimum sentences and simply required sentences to be within the relevant range.  Making adjustments to the sentence by the use of statutory enhancement and mitigating factors is clearly stated to be a non-binding, advisory guideline for the sentencing court's consideration along with other relevant sentencing principles.

Here, in imposing a nine-year, split-confinement sentence, the trial court discussed and considered that the Defendant had a extensive juvenile record, a minimal employment history, a lack of remorse, and a lack of credibility.  The Defendant was evasive when questioned about the underlying offense; he failed to be candid about his employment history, his reason for selling drugs, and the extent of his involvement in the underlying offense.  The Defendant's lack of candor in his testimony is a poor reflection on his potential for rehabilitation.  See State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); see also State v. Michael R. Harness, No. E2004-01946-CCA-R3-CD, 2005 WL 2515780, at *5 (Tenn. Crim. App., Knoxville, Oct. 11, 2005) (court denied alternative sentencing finding, among other factors, defendant had not shown enough accountability for the offense).  The court also considered that the Defendant was on bail for another charge when he committed this offense.

Although these are not statutory enhancement factors,[2] in our view, the reasons stated are sufficient to support the sentence as enhanced. Even if no statutory enhancement factors are present, our sentencing laws do not mandate the minimum sentence within the range. Indeed, such a sentencing structure would violate the Defendant's Sixth Amendment rights. See State v. Gomez, 239 S.W.3d 733, 741 (Tenn. 2007) (citing Cunningham v. California, 549 U.S. 270 (2007)); see also Blakely v. Washington, 542 U.S. 296, 301 (2004).

Our supreme court has held that,

> [i]n determining which sentence within the range to impose, however, the trial court is no longer required to begin with a presumptive sentence subject to increase and decrease on the basis of enhancement and mitigating factors. An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act.

Carter, 254 S.W.3d at 346.

Under our de novo review, we conclude that the trial judge's sentence of nine years is consistent with the purposes and principles of our Sentencing Act. Furthermore, the Defendant has not carried his burden of establishing his suitability for probation and has not established that total suspension of his sentence serves the ends of justice or the best interest of the public. The trial court did not err or abuse its discretion by ordering the Defendant to serve one year of his sentence in confinement.

**Conclusion**

Based upon the foregoing reasoning and authorities, we conclude that the evidence is sufficient to support the Defendant's conviction for possession of .5 grams or more of

---

[2] "The Defendant has only a juvenile record, which cannot be used to support a finding under Tennessee Code Annotated section 40-35-114(1) that he 'has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range.'" State v. Eddrick Devon Pewitte, No. W2008-00747-CCA-R3-CD, 2009 WL 29891, at *9 (Tenn. Crim. App., Jackson, Jan. 5, 2009) (quoting State v. Jackson, 60 S.W .3d 738, 742 (Tenn. 2001)). Additionally, because his prior juvenile adjudications were not felonies, the juvenile delinquent factor (16) does not apply. See Tenn. Code Ann. § 40-35-114(16). Finally, Tennessee Code Annotated section 40-35-114(13)(A) requires that a defendant released on bail for a prior misdemeanor or felony must ultimately be convicted of that earlier crime in order for his status as a bailee to be used to enhance his sentence. The record contains no indication that the Defendant was so convicted.

cocaine with the intent to sell.  The sentence as imposed is consistent with our 1989 Criminal Sentencing Reform Act.  The judgment of the Maury County Circuit Court is affirmed.


_____
DAVID H. WELLES, JUDGE